**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Gregory A. Leonard, Sr., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:07-cv-283 |
| | ) | |
| Michael Pryne, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ORDER

This matter is before the Court on motions for summary judgment filed by

Defendant Jeremy Trentman  (doc. 27) and Defendants Michael Pryne and Robert Elliott

(doc. 28).  Plaintiff opposes the motions.  Docs. 35, 37.  For the reasons that follow,

Defendants' motions for summary judgment are **GRANTED.**

I. Introduction

Plaintiff Gregory A. Leonard, Sr. brings this action under 42 U.S.C. § 1983 against

Defendant Jeremy Trentman, a police officer for Springfield Township, Ohio, and

Defendants Michael Pryne and Robert Elliott, police officers for the city of Silverton,

Ohio.  Plaintiff sues the Defendants in their individual capacities.  He claims violations of

his Fourth Amendment right to be free from unreasonable seizure and illegal arrest, his

First Amendment right to free speech, and his Sixth Amendment right to counsel.

1

According to the Complaint, this action arises out of events that occurred on July 2, 2005, when Defendants stopped Plaintiff's son, Gregory Leonard, Jr. (hereinafter, "Gregory") as he was driving down Montgomery Road in the city of Silverton, Ohio. Plaintiff alleges that although Defendants purportedly stopped Gregory for a loud stereo and an equipment violation, in fact the stop was for the purpose of searching his car based on a very slim suspicion that Gregory was engaged in drug dealing. Plaintiff alleges that Gregory contacted him by cell phone after being stopped; Plaintiff went to the site of the stop; and Plaintiff attempted to assist Gregory by advising the police officers that they had no right to search the vehicle and no grounds to arrest or charge his son, that Plaintiff would not tolerate them holding Gregory any longer or placing him under arrest, and Plaintiff would have a lawyer involved as soon as possible. The police officers then seized Plaintiff, placed him under arrest, and charged him with obstructing official business and resisting arrest, both misdemeanors carrying potential jail time. Plaintiff was found not guilty of the misdemeanors after being tried in the Hamilton County, Ohio, Municipal Court.

## II.  Facts

Defendants Elliott and Pryne have submitted Declarations in which they provide the following version of the traffic stop and the events leading up to the stop: At

approximately 10:25 p.m. on the evening of the stop, Pryne and Trentman were working on an undercover detail when they observed a red SUV with a loud stereo pull into the lot of the drive-thru they were patrolling.  The vehicle stopped, a young white female entered the vehicle, and she remained there for no more than approximately one minute before leaving the area on foot.  The officers contacted Lieutenant Schlie of the Deer Park Police Department and attempted to have him stop the vehicle based on their suspicion that a drug deal had just transpired, but the vehicle was gone before he arrived.  The officers observed the vehicle leave the drive-thru at a high rate of speed and commit several traffic violations.  They contacted Elliott to request that he stop the vehicle.  Pryne advised Elliott that the vehicle had committed several traffic violations, including having a loud car stereo.

Elliott initiated the traffic stop, while Pryne and Trentman took a surveillance position in a parking lot in order to assist Elliott if necessary.  Elliott approached the driver's side of the vehicle and requested Gregory's driver's license and proof of insurance.  While Gregory was removing his license from his wallet, Elliott observed that there was a second license behind the first, which Elliott also requested.  After initially refusing to provide the second license, Gregory gave it to Elliott.  Gregory became upset and said he was being harassed.  When Elliott returned to the police cruiser, Pryne contacted him and advised him that he believed Gregory had just been involved in a drug deal with a female prior to the stop.  While Elliott ran the licenses, he observed Gregory reaching around the vehicle, primarily in the center console area.  Elliott advised Pryne

that Gregory was being uncooperative and repeatedly reaching throughout the vehicle.

Pryne and Trentman could see Gregory's head drop from view as if he was reaching for

something on the other side of the vehicle or beneath a seat.  When Elliott returned to the

vehicle, he asked Gregory for permission to search the vehicle, which Elliott denied.

Elliott asked what Gregory had been looking for when he was reaching around the

vehicle, and he responded that he was looking for his vehicle registration, which he

handed to Elliott.  Gregory then called a female and told her to have the owner of the

vehicle come to the traffic stop.  Elliott advised Gregory that he did not have a problem

with anyone coming to the traffic stop, but if they interfered with the stop, they would be

arrested.  Gregory then made another call and told a female to contact his father and to

"bring everybody."

        Elliott went to his cruiser and advised Pryne and Trentman of Gregory's phone

conversation.  Pryne arrived and approached the vehicle on the passenger side, and Elliott

approached on the driver's side.  Pryne observed "a green vegetable matter on the front

passenger seat that had the appearance of marijuana shake," and he told Gregory to get

out of the car.  Pryne ordered Gregory out of the vehicle and Elliott escorted Gregory,

who was yelling and cursing at the officers, to the sidewalk.

        At this time, Plaintiff arrived, approached Elliott, handed him a business card for a

lawyer, and told Elliott that Gregory was not to answer any questions.  Elliott told

Plaintiff that was fine and asked him to return to his vehicle.  Both Gregory and Plaintiff

began to yell at Pryne about his reasons for searching the vehicle.  Elliott informed

4

Plaintiff that if he did not calm down and stop yelling, then Elliott would have to arrest him.  Plaintiff asked Pryne to tow the vehicle instead of searching it in the street, and Pryne advised him that Gregory would be getting a misdemeanor ticket and would be released with the vehicle.  Trentman approached Elliott and told him to place Gregory in the backseat of his cruiser because they had found more marijuana.  Eliott patted Gregory down and placed him in the backseat without handcuffs on.  The officers found two small "roaches" in the cellophane of a cigarette pack in the car.  Elliott went to the cruiser, opened the rear door, saw Gregory on his cell phone, showed him what they had found, and asked him if he knew it was in the car.  Gregory reached out in an aggressive manner, grabbed Elliott's hand, and said, "Let me see."  A scuffle ensued after Gregory refused to get out of the car and hang up the phone and resisted the officers' attempts to handcuff him.  Plaintiff got out of his car and came toward the officers as they were attempting to deal with Gregory.  Pryne had to disengage from Gregory and go over to stop Plaintiff. According to Pryne, Plaintiff continued to make physical advances on Pryne and verbalized threats, thereby distracting him from searching Gregory's vehicle.

During the course of the stop, Pryne advised Plaintiff to back up and not interfere with the officers' duties at least twice.  Plaintiff, despite being advised to stay in his vehicle and not interfere with the traffic stop, repeatedly and loudly threatened the officers.  By his threats and actions, Plaintiff took some of the officers' attention away from their duties with regard to Gregory and slowed down their job performance.

Elliott asked Pryne if he wanted to arrest Plaintiff for obstruction, and Pryne said

5

that he did.  The officers arrested Plaintiff for disorderly conduct and obstructing official business.  Pryne and Elliott escorted Plaintiff over to Elliott's cruiser and placed him in the backseat.  Plaintiff kicked the back window of the cruiser, and the officers all ran over and told him to stop.  They observed that he had kicked the window out of the seal.  Plaintiff continued to yell at the officers and at one point told them to let him out of the car, take the handcuffs off, and let him fight with them to solve the issue.

The Fire Department arrived and took Gregory to the hospital since he complained of stomach pain.  Elliott then transported Plaintiff to the police department.  In the holding cell, he took the mattress off the bed and started jumping on and kicking the metal frame.  After Elliott had finished the paperwork, he, Lieutenant Schlie, and Trentman decided that it would be best to shackle Plaintiff so that he would not be able to kick the window again.  Schlie placed the shackles on Plaintiff.  Plaintiff complained twice that the shackles were too tight, so Elliott loosened them.  When Elliott sat down in the driver's seat, Plaintiff began yelling and kicking the divider between the front and back seat of the cruiser.  Elliott tied Plaintiff's shackles and handcuffs together with plastic ties so that he would not be able to kick, placed him in the backseat of the cruiser, and transported him to the Justice Center.

Plaintiff has alleged very few facts in his opposing memorandum.  He has submitted a DVD of the traffic stop, which the Court has reviewed.  In addition to the DVD, Plaintiff had directed the Court to a few pages of his deposition testimony.  Plaintiff testified at those portions of his deposition that at one point he and the officers

6

were exchanging words; Plaintiff got out of the vehicle and walked up to Gregory's car when he thought that the stop had gone on too long; Plaintiff was begging the officers to write the ticket; and at one point when Trentman was telling Gregory to get over by the car and not to move, Plaintiff asked, "He's not under arrest, is he?"  Plaintiff's depo., p. 143.  The second time Plaintiff got out of his car, he was begging for the ticket to be written so that he could leave, and Officer Pryne was telling him to return to his car so that Pryne could conduct his business.  Plaintiff's depo., p. 159.  After Plaintiff had been placed in the police cruiser, he saw the officers pulling on Gregory's legs and arms to make him sit up after he had told them he was hurt, and Plaintiff kicked the side door of the police cruiser to try to get their attention and draw them back to the cruiser, which he succeeded in doing as to two of the officers.  Plaintiff's depo., p. 167.

### III.  Motions for Summary Judgment

Defendants move for summary judgment on all claims against them.  Defendant Trentman contends that he is entitled to summary judgment on the claims for false arrest and violation of Plaintiff's First Amendment rights because he did not arrest Plaintiff; even if he is considered to have assisted in Plaintiff's arrest, probable cause existed to arrest Plaintiff; and there is no evidence to show that protected speech was a motivating factor in Plaintiff's arrest.  He argues that he is entitled to summary judgment on the Sixth Amendment claim because Plaintiff did not request the assistance of counsel at any time and he was not involved in a criminal prosecution at the time of the events alleged in the Complaint.  Defendant Trentman asserts that Plaintiff cannot prevail on a claim that he

was physically injured from being handcuffed because he was not actually injured. Finally, Defendant Trentman contends that he is entitled to qualified immunity on all claims raised by Plaintiff because a reasonable officer could have believed that the arrest and handcuffing of Plaintiff was lawful.

Defendants Pryne and Elliott argue that they are entitled to summary judgment on the Fourth Amendment claim because they had probable cause to justify the arrest of Plaintiff; to the extent Plaintiff claims the officers used excessive force, the officers used only the force necessitated by Plaintiff's conduct; and Plaintiff cannot succeed on his § 1983 claim because success on that claim would necessarily imply the invalidity of his prior conviction for criminal damaging, a result precluded by Heck v. Humphrey, 512 U.S. 477 (1994). Defendants Pryne and Elliott allege that they are entitled to summary judgment on Plaintiff's First Amendment claim because his speech was not protected speech, Plaintiff was not arrested based on his speech, and there was probable cause to arrest Plaintiff so as to preclude a claim for a First Amendment violation. Defendants assert that they are entitled to summary judgment on Plaintiff's claim for violation of his Sixth Amendment right to counsel because Plaintiff never requested counsel and was not involved in a criminal prosecution while in Defendants' custody. Finally, Defendants allege that they are entitled to qualified immunity because their conduct was not obviously unconstitutional and there were no Supreme Court or Sixth Circuit cases that would have put reasonable officers on notice that arresting Plaintiff for obstructing official business based on his conduct at the scene of the traffic stop violated his

8

constitutional rights.

IV. <u>Summary Judgment Standard</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. <u>United States v. Diebold, Inc</u>., 369 U.S. 654, 655 (1962). "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 247-248 (1986) (emphasis in original). The court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Anderson</u>, 477 U.S. at 250. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. <u>Id</u>.

Although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, <u>Smith v. Hudson</u>, 600 F.2d 60, 63 (6th Cir. 1979), the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural

shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

## V. Resolution of Plaintiff's Claims

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . ." To establish a claim under § 1983, plaintiff must prove that "(1) a person, (2) acting under  color of state law, (3) deprived the plaintiff of a federal right." Berger v. City of Mayfield Heights, 265 F.3d 399, 405 (6th Cir. 2001).

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  A qualified immunity analysis consists of two questions: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right, and (2) if a violation could be made out on a favorable view of the parties' submission, was the right clearly established at the time of the injury? Saucier v. Katz, 533 U.S. 194, 201 (2001).  The unlawfulness must be apparent in light of pre-existing law. Anderson v. Creighton, 483 U.S. 637, 640 (1987). "If officials of reasonable competence objectively could disagree on the law, immunity should be recognized." Cameron v. Seitz, 38 F.3d 264, 272 (6th Cir. 1994) (citing Mumford v. Zieba, 4 F.3d 429, 432 (6th Cir. 1993)).

10

A.  Fourth Amendment Claim

a.  Unreasonable Seizure

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  The Fourth Amendment requires probable cause for an arrest.  Lyons v. City of Xenia, 417 F.3d 565, 573 (6th Cir. 2005).  The issue of "probable cause" turns on whether the "facts and circumstances within the officer's knowledge [ ] are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  Mich. v. DeFillippo, 443 U.S. 31, 37 (1979);  see also Feathers v. Aey, 319 F.3d 843, 851 (6th Cir. 2003) (probable cause exists if there is "a fair probability that the individual to be arrested has either committed or intends to commit a crime.")  "Courts look at this question through the lens 'of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"  Lyons, 417 F.3d at 573 (citing Klein v. Long, 275 F.3d 544, 550 (6th Cir. 2001)).  The fact that an individual is later acquitted of the crime for which he is arrested is irrelevant to the question of whether the arrest is valid.  DeFillippo, 443 U.S. at 36.

A defendant is not entitled to qualified immunity on an unreasonable arrest claim "if no reasonably competent peace officer would have found probable cause."  Leonard v. Robinson  477 F.3d 347, 355 (6th Cir. 2007) (citing Malley v. Briggs, 475 U.S. 335, 341 (1986).  Conversely, "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and [the Supreme

11

Court has] indicated that in such cases those officials - like other officials who act in ways they reasonably believe to be lawful - should not be held personally liable." <u>Anderson</u>, 483 U.S. at 641.

The issue of whether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law. <u>DeFillippo</u>, 443 U.S. at 36. Plaintiff claims in this case that Defendants did not have probable cause to arrest him for a violation of Ohio Rev. Code § 2921.31, which provides as follows:

> (A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

> (B) Whoever violates this section is guilty of obstructing official business, . . . a misdemeanor of the second degree.

A conviction under § 2921.31 requires "(1) the performance of an unprivileged act, (2) with the purpose of preventing, obstructing or delaying the performance by a public official of an authorized act within his official capacity (3) which hampers or impedes the public official in the performance of his lawful duties." <u>City of N. Ridgeville v. Reichbaum</u>, 112 Ohio App.3d 79, 84 (1996); <u>City of Hamilton v. Hamm</u>, 33 Ohio App.3d 175, 176 (1986).[1]

An unprivileged act may include "hostile or abusive speech that obstructs officers

---

[1] The court in each case was construing a local ordinance that contained the same language as § 2921.31(A).

from fulfilling their duties . . ."  Lyons, 417 F.3d at 574 (citing State v. Stayton, 126 Ohio App.3d 158 (1998)).  The act requirement may be met if "the volume and demeanor of the defendant make it impossible for police to question another individual . . ."  Id. (citing City of Warren v. Lucas, 2000 WL 655446, at *3 (Ohio App. May 19, 2000) (unpublished decision);  Reichbaum, 112 Ohio App.3d at 84 (finding sufficient affirmative acts where, after police officer responded to a complaint about a disturbance at the defendant's home, the defendant repeatedly answered the investigatory questions posed to his stepdaughter, shouted so that the officer could not obtain the stepdaughter's version of what had precipitated the disturbance call, and refused to be led away from his stepdaughter and the officer despite being informed that an investigation of the complaint had to be conducted, and the officer was forced to cease his investigation when the defendant resisted efforts by another officer to subdue him).

The court in Lyons found that a reasonable officer could conclude that the defendant had committed affirmative acts that interfered with police business where she engaged in "profanity-laced yelling and finger-pointing at the officer," her speech was disruptive in its volume and demeanor, and she refused to answer questions about her daughter, who was suspected in an assault, or to allow her daughter to be taken to the police station.  417 F.3d at 575.  Similarly, in State of Ohio v. Fort, the court held that the "act" requirement  and all of the elements of obstructing official business could be found beyond a reasonable doubt where appellant asked the officer at least three times during the course of an investigation what was going on; each time the officer told him to

13

continue on his way and that the police investigation did not concern him; the officer walked down the street to appellant's vehicle, leaving the other officer alone with the three subjects under investigation, and told appellant he was interfering with the arrest and impeding traffic; appellant refused to exit his vehicle several times after being asked to do so and the other officer had to leave the three subjects alone in order to assist with appellant; appellant's arrival at the scene delayed the investigation 30 to 45 minutes; and the officers were forced to call for back-up since they could not handle appellant's disturbance and monitor the traffic stop suspects at the same time. 2003 WL 930487 (Ohio App. 7 Dist.) (unpublished decision).

As to the third requirement of § 2921.31, which is that the act hamper or impede a public official in the performance of his lawful duties, it is not enough that a police officer is acting unlawfully under the circumstances; rather, an individual is not entitled to obstruct the officer in the discharge of his duties absent a showing of bad faith on the part of the police officer. See State v. Jeffers, 1988 WL 63932, *1 (Ohio App. 9 Dist.) (unpublished decision) (citing State v. Pembaur, 9 Ohio St.3d 136, syll. (1984) (absent a showing of bad faith on the part of the police officer, a person cannot obstruct the officer in the discharge of his duties, whether or not the officer's actions are lawful under the circumstances).

In the present case, Plaintiff concedes that "Trentman's involvement was entirely with Plaintiff's son." Doc. 37, p. 1. Accordingly, Plaintiff cannot establish a Fourth

Amendment claim against Trentman for unreasonable arrest.

After having reviewed the video of the traffic stop and the other evidence cited by the parties in support of their respective positions, the Court finds that the remaining Defendants are entitled to qualified immunity on Plaintiff's Fourth Amendment unlawful arrest claim.  Plaintiff has conceded that he acted with the purpose of disrupting the Defendants' activities.  Plaintiff candidly admits that his "protestations and actions were to impede Defendants in the performance of unlawful acts with respect to his son and his son's vehicle."  Doc. 35, p. 3.  Plaintiff claims that it is clear from his deposition and the DVD of the traffic stop that his only purpose was to make sure that the officers limited their activities involving his son to "lawful ones," i.e., issuing a citation for the traffic violations for which Gregory was allegedly pulled over.  Id.  Plaintiff does not deny in his opposing memorandum that his actions in fact impeded Defendants Elliott and Pryne's performance of their duties.  Moreover, the objective evidence demonstrates that the facts and circumstances were sufficient to warrant a reasonable officer in believing under the circumstances that Plaintiff, by repeatedly getting out of his vehicle despite the officers' orders to stay in his vehicle, approaching the officers, and yelling at the officers as they tried to deal with Gregory, was intentionally impeding Defendants in the performance of their police duties pertaining to Gregory.  At the very least, officers of reasonable competence objectively could disagree on whether Plaintiff engaged in acts that obstructed their official business within the meaning of Ohio Rev. Code § 2921.31.

15

Turning to the third requirement of § 2921.31, Plaintiff claims that he was not impeding Defendants in the performance of their "lawful duties" at the time of his arrest because Defendants were performing an unlawful search of Gregory's car for contraband pursuant to a traffic stop that was ostensibly for a loud stereo or an equipment violation, and which therefore would not have justified a search of the interior of the car, and they were detaining Gregory and his vehicle well beyond the length of time necessary to run a computer check on his license and registration and issue him a traffic citation, in violation of Ohio law.  See State v. Batchili, 113 Ohio St.3d 403, 406 (2007) ("when detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning . . . includ[ing] the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates. . . 'In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation.'" (citations omitted)).  The Court will assume for summary judgment purposes that by detaining Gregory for as long as they did and by searching his car, Defendants exceeded their authority.  However, even assuming the officers' prolonged stop and search did not comport with Ohio law, this does not end the inquiry into whether there was probable cause to arrest Plaintiff for violating § 2921.31.  Plaintiff must further demonstrate that the officers acted in bad faith when performing their duties pertaining to Gregory.

Plaintiff offers no evidence of bad faith.  He simply alleges that what occurred

16

here is that Defendants believed that Gregory, who they did not like, had been involved in a drug transaction, a point on which the parties agree; they were determined they were going to search his vehicle; and they exceeded their authority by detaining Gregory and his vehicle well beyond the time necessary to run a computer check on his license and registration and issue him a traffic citation.  Plaintiff also generally alleges that the "claim that the officers observed 'marijuana' in the vehicle and that [sighting] justified their search, is incredible and conveniently self-serving," and cannot be credited by the Court on summary judgment because Plaintiff, as the non-moving party, is entitled to have the evidence construed most strongly in his favor.  Doc. 35, p. 7.  Far from demonstrating that the officers were acting in bad faith, Plaintiffs' allegations, accepted as true, establish that the traffic stop and the search of Gregory's car were motivated by Defendants' belief, based on their personal observations, that Gregory had just been involved in an illegal drug deal.  Defendants cannot be said to have been acting in bad faith by stopping and searching Gregory's car for this reason, after having additionally observed him commit several traffic violations.  This is true even if their detention of Gregory exceeded the time necessary to issue him a citation for the traffic violations, and even if the search of his car could possibly be said in hindsight to have been unlawful.

In short, reasonable officers could disagree as to whether there was probable cause to arrest Plaintiff for impeding the performance of their police duties.  Plaintiff has not come forward with sufficient evidence to create a genuine issue of material fact as to whether Defendants acted with an improper motive in performing the duties in question.

17

Accordingly, Defendants are entitled to qualified immunity and to summary judgment in their favor on the unreasonable arrest claim.[2]

b. Excessive Force

"[C]laims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Jones v. City of Cincinnati, 521 F.3d 555, 559 (6th Cir. 2008) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)).  "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989) (citing  Terry v. Ohio, 392 U.S. 1, 22-27 (1968)).  A determination as to whether the force used to effect a seizure is "reasonable" under the Fourth Amendment requires that the "nature and quality of the intrusion on the individual's Fourth Amendment interests" be balanced against "the countervailing governmental interests at stake." Graham, 490 U.S. at 396.

Plaintiff indicates in his opposing memorandum that he is not bringing a Fourth Amendment claim based on Defendants' use of excessive force by clarifying that his Fourth Amendment claim is for his unlawful arrest and seizure in violation of his right to be free from unreasonable seizure.  Plaintiff goes on to argue, however, that because

_____

[2]  In light of the Court's determination, it is not necessary to address Defendants' argument that pursuant to Heck v. Humphrey, 512 U.S. 477 (1994), Plaintiff's § 1983 claim for arrest without probable cause is barred because success on that claim would necessarily imply the invalidity of Plaintiff's conviction for criminal damaging.

everything Defendants did in the course of the stop and detention beyond the time necessary to issue a traffic citation and run a computer check of Gregory's driver's license and vehicle registration was allegedly unlawful, Defendants had no right to use any degree of physical force whatsoever against him.

Plaintiff's allegations are insufficient to withstand summary judgment on a claim for use of excessive force.  Plaintiff does not allege that Defendant Trentman used any force against him.  As to the other Defendants, even assuming, <u>arguendo</u>, that Plaintiff's arrest was unlawful, there is no support in the case law for the proposition that any physical force used in the course of an arrest is necessarily "excessive" within the meaning of the Fourth Amendment where the arrest is later found to be unlawful. Defendants are entitled to qualified immunity insofar as Plaintiff claims that Defendants used excessive force in the course of his arrest in violation of his Fourth Amendment rights.

B.  First Amendment Claim

Plaintiff makes only generalized and vague allegations in support of his First Amendment claim.  He alleges that criminal charges for violating § 2921.31 were lodged against him as punishment for "standing up to" the police and "speaking his mind" to them.  Defendants contend that Plaintiff's speech was not protected because it was not "high rhetoric directed at the general functioning of the Silverton and Deer Park Police Departments."  Doc. 28, p. 14.  Defendants further allege that the First Amendment does

not protect speech that amounts to a physical interruption of a police investigation, there is no evidence of a causal connection between the words Plaintiff spoke and his arrest, and want of probable cause must be proven by an individual suing police officers for First Amendment retaliation.

The First Amendment protects the right of individuals to "express disagreement with state action, without fear of reprisal based on the expression . . ." McCurdy v. Montgomery County, Ohio, 240 F.3d 512, 520 (6th Cir. 2001).  "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." Barnes v. Wright, 449 F.3d 709, 717 (6th Cir. 2006) (citing City of Houston v. Hill, 482 U.S. 451, 462-63 (1987)).  The elements of a claim for First Amendment retaliation are set forth in Robinson, 477 F.3d at 355.  A claimant establishes a First Amendment retaliation claim by showing (1) that the injury "would likely chill a person of ordinary firmness from continuing to engage in that activity," Bloch v. Ribar, 156 F.3d 673, 678 (6th Cir.1998), (2) "that his conduct was constitutionally protected," and (3) that it was a "motivating factor" behind the government's actions.  Adair v. Charter County of Wayne, 452 F.3d 482, 492 (6th Cir. 2006); Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).  In addition, "'want of probable cause must be alleged and proven' by a plaintiff bringing a § 1983 . . . suit for retaliatory prosecution." Robinson,  477 F.3d at 355 (citing Hartman v. Moore, 547 U.S. 250 (2006)).

For the reasons stated above, Plaintiff has not come forward with sufficient

evidence to prove a want of probable cause on the charge brought against him for obstructing police business.  Accordingly, Plaintiff cannot establish his claim that the charge was brought against him in retaliation for exercising his rights under the First Amendment.  Defendants are entitled to qualified immunity and to summary judgment on Plaintiff's First Amendment claim.

C.  Sixth Amendment Claim

Plaintiff admits that Defendants did not interfere with his right to contact an attorney during either the traffic stop or his subsequent detention.  Instead, Plaintiff apparently bases his Sixth Amendment claim on his contention that had Defendants charged him with the only crime of which he was eventually convicted - criminal damaging - instead of also arresting him for and charging him with obstructing official business and resisting arrest, his defense would have been much simpler and he would not have incurred the attorneys fees that he did.

Plaintiff has not cited any authority for the proposition that causing an individual to incur additional attorney fees in defending against a criminal charge can constitute a violation of the Sixth Amendment right to counsel.  Defendants are entitled to qualified immunity and summary judgment on the Sixth Amendment claim.

VI.  Conclusion

In accordance with the foregoing, Defendants' motions for summary judgment (docs. 27, 28) are **GRANTED**.  Plaintiff's claims are **DISMISSED WITH**

21

**PREJUDICE.  THIS CASE IS CLOSED.**

    **IT IS SO ORDERED.**

Date: <u>June 24, 2008</u>                    <u>S/ Sandra S. Beckwith</u>

                                                Sandra S. Beckwith, Chief Judge

                                                United States District Court